THE ATTORNEY GENERAL, EX REL. HENRY M. REYNOLDS, v. WILLIAM MAY.

[See 94 Mich. 505.]

*Quo warranto—Pleading—Replication—Demurrer—Rejoinder.*

1. Mere matters of evidence in pleadings are treated as surplusage.

2. A replication to a plea in *quo warranto* proceedings to test the title to an office, which apprises the respondent of the matters

upon which the relator relies, and to which the evidence is to be directed, is sufficient; citing *People v. Miller*, 15 Mich. 354.

3. When the issue is framed in such a proceeding, the same rules of evidence apply as in other cases, and the respondent has no cause to complain if the relator has seen fit to set forth in his replication certain evidence upon which he relies to maintain his title.

4. Where the issue of fact presented by a replication is whether a certain number of illegal ballots were cast because the voters casting them were unregistered, a verification tendering the registration and poll lists as proof of the issue is sufficient; and if the respondent disputes such public records, or seeks to avoid their *prima facie* effect, he should in his rejoinder give the relator notice of his defense thereto.

5. A replication alleging that a certain number of ballots were exhibited in a certain precinct, contrary to law, and that the election in that precinct was therefore void, and that, with said ballots thrown out, the relator is elected, is not open to the objection that it tenders an immaterial issue upon an item of evidence, and that it does not aver that the election in the precinct was so invalid as to effect the disfranchisement of all of the electors therein.

6. A course of pleading by which the relator, in his replications, proceeds upon the theory that, except as to the vote of those precincts and the ballots which he specifies, and charges for reasons stated in the replications to be void, the returns of the inspectors and the report of the county canvassers are correct, and give the correct results, is proper and commendable.

7. The respondent, in his rejoinders, can either admit or traverse any of the allegations of the replications, and, if he claims mistake or fraud in other precincts, he is entitled to set up such claim specifically in his rejoinders, and the relator can, by his surrejoinders, join issue upon such claim.

8. Where demurrers are interposed in good faith, and not for the purpose of delay, to replications in *quo warranto* proceedings to test the title to an office, the respondent is entitled, upon the overruling of the demurrers, to a reasonable time to plead.

Information in the nature of a *quo warranto* to test the title of respondent to the office of clerk of Wayne county. Argued November 14, 1893. Demurrers to replications overruled November 24, 1893. The facts are stated in the opinion.

*A. A. Ellis,* Attorney General (*Jasper C. Gates* and *John B. Corliss,* of counsel), for relator.

*Edwin F. Conely* and *Orla B. Taylor,* for respondent.

GRANT, J. The information in this case is filed to test the title to the office of the clerk of Wayne county, and is in the usual form. The plea is also in the usual form, and alleges that at the election held on the 8th day of November, 1892, the respondent received the greatest number of votes, and was duly elected to the office.

Eight replications were filed. The first alleges that 54 of said votes are void and illegal, because each of said votes bore a distinguishing ·mark so made thereon as to distinguish it from the other ballots cast at said election, and that by reason thereof said respondent did not receive the greatest number of votes.

The second alleges that 20 other ballots were void for a similar reason, and that by reason thereof said May did not receive the greatest number of votes.

The third alleges that by the original canvass and returns of the several boards of inspectors of election in the various townships and voting precincts of said county, made according to law, it appeared that relator received 26,821 votes, and respondent 26,799 votes; that afterwards the board of county canvassers of said county of Wayne met, and said respondent filed with the clerk thereof a duly verified petition, alleging certain errors and mistakes in the canvass and returns of the boards of inspectors in many of the townships and voting precincts; that said board of canvassers caused all the ballot-boxes used in said election to be brought before it, to be opened, and a recount of the votes cast for said office to be made; that in the township of Ecorse 283 votes were cast for relator, and 423 for respondent; in the First ward of the city of Wyandotte, 199 votes were cast for relator, and 121 for respond-

ent; in the Third ward of said city of Wyandotte, 218 votes were cast for relator, and 127 for respondent. It sets forth the canvass and return of the votes by the boards of inspectors of election of said township of Ecorse, and the First and Third wards of said city of Wyandotte; alleges that after the votes had been so canvassed and returned, and before the ballot-boxes used in said township and wards had been brought before the board of county canvassers on the 10th of November, 1892, the votes so cast at said election in said township and wards were so changed, erased, altered, and mutilated in the interest of respondent as to destroy 106 votes which were in truth and in fact cast in favor of relator, and to insert in said ballot-boxes instead thereof 106 false and fraudulent votes in favor of the respondent, all in such a manner that no valid, legal, or effective recount of the votes so cast in favor of said relator and of said respondent for said office could be had or made under the direction of said board of county canvassers; that by the recount made by said board of county canvassers, aside from the votes cast in said township of Ecorse and said wards of the city of Wyandotte, relator received 26,760 votes, and the respondent 26,748.

The fourth alleges that, aside from the fourth precinct of the Fifth ward of the city of Detroit, relator received 26,462 votes, and respondent 25,897; that in said fourth precinct of the Fifth ward the returns showed 858 votes in favor of respondent, and 298 votes in favor of relator; that there was no valid or legal election held in said fourth precinct, for the reason that the board of inspectors of election received, canvassed, and returned with the other votes then and there cast 215 ballots cast by persons who were not then and there registered as electors of said precinct; that by reason thereof the election in said precinct was wholly vitiated.

No question is raised as to the fifth replication, and it need not therefore be noticed.

The sixth alleges that in said fourth precinct of the Fifth ward the chairman of the board of inspectors of election illegally and wrongfully received 750 ballots, and illegally and wrongfully deposited the same in the ballot-box, because said ballots had been marked, and, before the same had been deposited, were shown to persons who were not lawfully assisting the voters, or any of them, in the preparation of their ballots, and were shown in such a manner as to disclose to the persons to whom they were shown some or all of the names of the candidates voted for upon said ballots; that said ballots were so deposited, unmarked and unchallenged by the board of inspectors; that said votes went to make up the large majority of 553 votes in favor of the respondent; that by reason thereof the election in such precinct was rendered wholly invalid, illegal, and of no force or effect upon the election for the office of county clerk, and that by reason thereof said relator was elected by a majority of 565 votes.

The seventh replication alleges that 215 ballots were cast in said fourth precinct of the Fifth ward at said election by persons unregistered, and who did not, by the taking of any oath or otherwise on said election day, qualify themselves as electors of said precinct; that said votes were therefore illegal and void, and were illegally canvassed and returned by said board to the board of county canvassers, and that for that reason the election in said precinct was rendered invalid and illegal, and should have neither weight nor bearing upon the election to said office of the county clerk, and that, setting aside the vote of this precinct, said relator was duly elected to the office of county clerk.

No objection is raised to the eighth replication, and it need not therefore be noticed.

The respondent interposed a demurrer to replications 1, 2, 3, 4, 6, and 7.

The objection to the first and second replications is that it does not appear that the alleged illegal ballots therein mentioned had any effect upon the result of the election. The allegations should have been more specific in setting forth the precincts in which such votes were cast, and, had this objection been raised by the demurrer, it would have been sustained. They give the respondent notice that 54 votes, in one replication, and 20 in the other, are void, and should not have been counted, and that, with these thrown out, the relator had a majority of the votes cast. The replications proceed upon the theory that, aside from these 74 votes, the others were legal, and that of those relator received the greatest number. These replications apprise the respondent of the matters upon which the relator relies, and to which the evidence is to be directed. They are therefore sufficient. *People v. Miller*, 15 Mich. 354.

Three objections are raised to the third replication:

1. It does not appear but that the defendant in fact received the greatest number of legal votes cast for any candidate for the office of county clerk.

2. It does not appear but that the defendant received the greatest number of legal votes cast for any candidate for the office of county clerk, according to the lawful and proper recount of the board of county canvassers.

3. It does not state or allege a case which entitles the Attorney General to pray judgment against the defendant, etc.

It is insisted that the replication is bad because it sets up matters of evidence, and not of fact, and the respondent seems to fear that, if he joins issue upon it, he will be precluded from going outside the matters set up in the replication. The fear is not well grounded. Mere matters of evidence in pleadings are treated as surplusage. The issue is clearly tendered in the replication that, after the

canvass and return of the votes by the board of inspectors of election, the ballot-boxes were tampered with, votes in favor of relator destroyed, and others in favor of the respondent inserted in their stead. If this be true, it is clear that the original returns of the votes must be taken, subject to be changed by any competent evidence to impeach them, or to show the actual ballots cast. The respondent has no cause for complaint if the relator has seen fit to set forth in his replication certain evidence upon which he relies. When the issue is framed, the same rules of evidence apply as in other cases.

The objection to the fourth replication is that it does not conclude with a general verification, but with the statement that the Attorney General is only ready to verify the allegations in said replication by certain specified and inconclusive evidence. The verification is in the following language:

"And this the said Attorney General is ready to verify in and by the last said election returns, and in and by the registry of the qualified voters of the last said precinct, and the poll-list of the persons who voted in the last said precinct kept by the poll-clerks of the last said precinct at said election, when, where, and in such manner as this Court may direct; wherefore he prays judgment, etc."

The objection is without force. The issue of fact presented by this replication is whether 215 illegal ballots were cast because the voters were unregistered. The law requires the registration and poll lists to be preserved and filed in certain public offices. How. Stat. §§ 85, 86, 178. They have therefore become public records, and are admissible in evidence as proof of the facts therein stated. The registration lists and the poll-lists constitute evidence of the fact, and make at least the relator's *prima facie* case. The facts therein stated must be taken as true, unless in some competent way impeached. It was certainly proper, if not necessary, for the pleader to make profert of the

public records showing the facts upon which he relies for proof of the issue. If the respondent disputes the public records, or seeks to avoid their effect, it is no more than fairness in pleading that he should' in his rejoinder give the relator notice of his defense thereto. We think the verification is sufficient.

The objection to replication six is that it tenders an immaterial issue upon an item of evidence, and that it is not averred that the election in the district was so invalid as to effect the disfranchisement of all the electors therein. It is alleged that 750 ballots were exhibited contrary to law; that the election in that precinct was therefore void; and that, with those votes thrown out, the relator was elected. The allegation is not confined to the canvass and recount, but to the illegality of the vote. If respondent's position be true that the replication alleges simply that the canvass and the recount of the votes cast at this precinct were invalid and illegal, the fair import of the language is that it attacks the legality of the entire vote for the entire precinct, and insists that it should be thrown out. Furthermore, it is distinctly alleged that with this vote thrown out the relator was elected.

The seventh replication is, in substance, the same as the fourth, and what has been said in regard to that applies with equal force to this; but this replication, in addition to what counsel term a "limited verification as to evidence," also contains the general verification.

It is insisted by respondent's counsel that the replications seek to avoid the real issue, to wit, who received the greatest number of votes? We cannot concur in this view. It appears that, in addition to the count made by the boards of inspectors of election, the board of canvassers of the county also caused the ballot-boxes to be produced before it, and had a recount of the votes. This was done in the presence of the respective parties. *May v. Board of Can-*

*vassers,* 94 Mich. 505. It does not as yet anywhere appear to have been claimed that there were mistakes or frauds in all the election precincts of the county, nor has it yet appeared that there is any necessity for a recount of all the ballots cast,—a tedious process, to be avoided if possible. Relator's replications proceed upon the reasonable theory that, except as to those precincts and ballots which he specifies and charges to be void for the reasons stated, the returns are correct, and the report of the county canvassers correct, and that the exact and correct results are there given. The relator has sought to point out the illegal votes which he claims changed the declared result in favor of respondent, and show his election. We think this course of pleading is proper and commendable. It seeks to narrow the issues. When the respondent rejoins to the replications, he can either admit or traverse any of the allegations therein set forth. If he claims a miscount elsewhere, or that there is a mistake or fraud elsewhere, he is entitled to set that up specifically in his rejoinder, and the relator will, by his surrejoinder, join issue thereon.

It is contended by the relator that, if the demurrers are overruled, judgment of ouster should be entered. We need not discuss the authorities cited by his counsel in support of this proposition. We think it the settled rule of this Court that where demurrers in such cases are interposed in good faith, and not for the purpose of delay, the respondent is entitled, upon the overruling of the demurrer, to a reasonable time to plead. It is unfortunate in *quo warranto* cases of this character, where the public as well as the individuals directly concerned are interested, that there should be delay in joining issue and bringing the case to trial, and this Court is disposed to do all in its power to bring such cases to a speedy trial. There is nothing in the record now before us to indicate where the blame, if any exists, rests.

The demurrers will be overruled, with costs, and the respondent given five days, after service of notice of this order upon his attorneys, within which to file and serve his rejoinder. The relator will then have a like time within which to file his surrejoinder. The case will then be placed upon the docket of the circuit court for the county of Wayne for trial, without notice, and must be given precedence over all other cases.

The other Justices concurred.